IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER [(540) 519-3890] THAT IS STORED AT PREMISES CONTROLLED BY **T-MOBILE** | Case No. 7:21mj128<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Burton, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone assigned call number **[(540) 519-3890]**,

("the SUBJECT PHONE"), that is stored at premises controlled by **T-MOBILE**, a wireless

telephone service provider headquartered at 3625 132nd Ave SE, Bellevue, Washington 98006.

The information to be searched is described in the following paragraphs and in Attachment A.

This affidavit is made in support of an application for a search warrant under 18 U.S.C. §

2703(c)(1)(A) to require **T-MOBILE** to disclose to the government copies of the information

further described in Section I of Attachment B.  Upon receipt of the information described in

Section I of Attachment B, government-authorized persons will review the information to locate

items described in Section II of Attachment B.

2.      I am a Special Agent, with the Bureau of Alcohol, Tobacco, Firearms and

Explosives and have experience in the investigation, apprehension and prosecution of individuals

involved in federal criminal offenses, the use of cellular devices to commit those offenses and

the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3.      The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(a)(6) and 18 U.S.C § 922(a)(1)(A) have been committed by Sedale YOUNG. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

### CASE INITIATION

5.      In October 2019, ATF submitted a query to the Firearms Transaction Center (FTC) of the Virginia State Police, seeking records of firearm transaction approvals for Sedale YOUNG based on purchaser background checks. Records received from the FTC in response to this inquiry reflected numerous firearms purchase approvals for YOUNG over an eight-month period between February and October 2019. Each such approval was linked to purchases from various Federal Firearms Licensees (FFL).

### SUMMARY OF INTELLIGENCE CONCERNING
### FIREARM PURCHASES AND RECOVERIES

6.      Based on these reports, multiple sales reports, and firearms trace summaries, ATF obtained Form 4473 Firearms Transaction Reports for YOUNG's purchases. According to

2

the reports listed above, YOUNG purchased approximately sixty-nine (69) firearms between

February 2, 2019, and October 19, 2019 as follows:

| | |
|---|---|
| February 2, 2019: | Hi-point, Model JHP, .45 caliber, SN: X4313139 |
| March 24, 2019: | Smith & Wesson, Model SD40VE, .40 caliber, SN: FBD2590<br>Taurus, Model G2C, 9mm, SN: TLX74988 |
| April 06, 2019: | Smith & Wesson, Model SD40, .40 caliber, SN: FBD2590[1] |
| May 10, 2019: | Glock, Model 27, .40 caliber, SN: DMX331 |
| May 18, 2019: | Taurus, Model G2C, 9mm, SN: TMD33615 |
| May 31, 2019: | Taurus, Model G2C, 9mm, SN: TLY14861<br>SCCY, Model CPX-2, 9mm, SN: 749276 |
| June 04, 2019: | Taurus Model G2C, 9mm, SN: TMA96973 |
| June 08, 2019: | Taurus, Model G2C, 9mm, SN: TMB70258 |
| June 15, 2019: | Taurus, Model G2C, 9mm, SN: TLY02164<br>Cobra Firearms, Model CEN380, .380 caliber, SN: K25999 |
| July 05, 2019: | Bond Arms, Backup, .45 caliber, SN: 170985 |
| July 24, 2019: | Taurus, Model G2C, 9mm, SN: TMR19788 |
| August 1, 2019: | Smith & Wesson, Model SD40, .40 caliber, SN: FBL5400<br>Smith & Wesson, Model SD40, .40 caliber, SN: FBL1787 |
| August 7, 2019: | Taurus, Model G2C, .40 caliber, SN: SMR37310 |
| August 11, 2019: | Smith & Wesson, Model SD40VE, .40 caliber, SN: EBJ8638<br>Smith & Wesson, Model SD40, .40 caliber, SN: FBB1605 |
| August 13, 2019: | Ruger, Model EC9, 9mm, SN: 456-02501 |
| August 15, 2019: | Taurus, Model G2C, 9mm, SN: TMR20478 |
| August 17, 2019: | Smith & Wesson, Model SD40VE, .40 caliber, SN: FBJ5596 |

---

[1] This April 6, 2019 transaction of the same firearm purchased by YOUNG on March 24, 2019 was a pawn redemption, resulting in a separate Form 4473.

3

|  | Smith & Wesson, Model SD40, .40 caliber, SN: FBD2824 |
|  | Springfield Arms, Model XDS, .45 caliber, SN: HGIZ0898 |

| August 18, 2019: | FN Herstal, Model Five-Seven, 5.7mm, SN: 3X6366841 |
|  | Sig Sauer, Model P320, .40 caliber, SN: 58A016675 |
|  | Sig Sauer, Model P320, .40 caliber, SN: 58B182391 |
|  | Del-Ton, Model DTI-15, .556 caliber, SN: DTI-5188796 |
|  | Taurus, Model G2C, 9mm, SN: TMS71197 |

| August 21, 2019: | Taurus, Model G2C, 9mm, SN: TMS52084 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR37257 |

| August 27, 2019: | Taurus, Model G2C, 9mm, SN: TMR29508 |
|  | Taurus, Model G2C, 9mm, SN: TMR27031 |
|  | Taurus, Model G2C, 9mm, SN: TMR29676 |
|  | Taurus, Model G2C, 9mm, SN: TMR29467 |
|  | Taurus, Model G2C, 9mm, SN: TMR29708 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR37191 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR37493 |

| August 29, 2019: | Smith & Wesson, Model SD40, .40 caliber, SN: FBL7380 |
|  | Smith &Wesson, Model SD40, .40 caliber, SN: FBL7334 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR41510 |
|  | Taurus, Model G2C, 9mm, SN: TMR29486 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR41602 |

| September 2, 2019: | Taurus, Model G2C, 9mm, SN: TMR29725 |
|  | SCCY, Model CPX-2, 9mm, SN: 792971 |
|  | SCCY, Model CPX-2, 9mm, SN: 780856 |
|  | Del-ton, Model DTI-15, .556, SN: DTIS188794 |

| September 3, 2019: | Taurus, Model G2C, .40 caliber, SN: SMR37609 |

| September 8, 2019: | Del-ton, Model DTI-15, .556 caliber, SN: DTI-5188792 |
|  | Taurus, Model G2C, 9mm, SN: TMT51427 |

| September 13, 2019: | Glock, Model 23, .40 caliber, SN: BLFE271 |
|  | Glock, Model 23, .40 caliber, SN: BLFE287 |
|  | Glock, Model 23, .40 caliber, SN: BLFE369 |

| September 26, 2019: | Taurus, Model G2C, .40 caliber, SN: SMR11565 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR11573 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR11575 |
|  | Taurus, Model G2C, .40 caliber, SN: SMR36760 |

> Taurus, Model G2C, .40 caliber, SN: SMR11732
> Taurus, Model G2C, .40 caliber, SN: SMR37739
> Taurus, Model G2C, .40 caliber, SN: SMR37676
> Taurus, Model G2C, .40 caliber, SN: SMR11731
> Taurus, Model G2C, .40 caliber, SN: TMS43355
> Taurus, Model G2C, 9mm, SN: TMS43516

September 27, 2019:  Glock, Model 27, .40 caliber, SN: BKLD736
SCCY, Model CPX-2, 9mm, SN: 829581
Taurus, Model G2C, 9mm, SN: TMT50519

October 5, 2019:  SCCY, Model CPX-2, 9mm, SN: 360878
SCCY, Model CPX-2, 9mm, SN: 822450

October 19, 2019  Taurus, Model G2C, 9mm, SN: TMT46815
Taurus, Model 603, .357 caliber, SN: MC59610

7.      ATF began investigating YOUNG for suspected straw purchasing and engaging in the business of dealing in firearms without a federal firearms license, in violation of 18 U.S.C. §§ 922(a)(6) and 922(a)(l)(A).

8.      Your affiant knows from training and experience that it is common for straw purchasers to purchase multiple firearms of the same make and model in a short period of time. For example, between August 21, 2019, and September 27, 2019, YOUNG purchased twenty-five (25) Taurus, Model G2C semi-automatic pistols in either .40 caliber or 9mm, eight of which have been recovered by law enforcement in connection with criminal activity in the metropolitan Washington, D.C. area.

9.      A number of firearms purchased by YOUNG have been recovered from crime scenes and from individuals suspected of criminal activity. Firearm trace summaries and corresponding police reports indicate that 21 firearms purchased by YOUNG were recovered by law enforcement between September 5, 2019 and March 22, 2021, in connection with criminal

5

investigations in several states. The majority were recovered in the metropolitan Washington,

D.C. area:

| | |
|---|---|
| September 5, 2019: | SCCY, Model CPX-2, 9mm, SN: 792971<br>SCCY, Model CPX-2, 9mm, SN: 780856<br>Taurus, Model G2C, 9mm, SN: TMR29708<br>Taurus, Model G2C, 9mm, SN: TMR29486<br>*Recovered in Waldorf, Maryland, by the Charles County Sheriff's Office with assistance by the ATF Baltimore Field Division* |
| October 9, 2019: | FN Herstal, Model Five-Seven, 5.7mm, SN: 3X6366841<br>*Recovered in Washington, DC by ATF Washington Field Office* |
| October 17, 2019: | Taurus, Model G2C, 9mm, SN: TMB70258<br>*Recovered in Roanoke, Virginia, by the Roanoke City Police* |
| October 26, 2019: | Smith & Wesson, Model SD40VE, .40 caliber, SN: EBJ8638<br>*Recovered in Washington, DC, by the DC Metropolitan Police* |
| October 27, 2019: | Taurus, Model G2C, .40 caliber, SN: SMR37257<br>*Recovered in Washington, DC, by the DC Metropolitan Poli* |
| October 30, 2019: | Glock, Model 23, .40 caliber, SN: BLFE369<br>*Recovered in Greenbelt, Maryland, by the Prince George's County Police* |
| November 22, 2019: | Taurus, Model G2C, 9mm, SN: TMR29508[2]<br>*Recovered in Suitland, Maryland, by the Prince George's County Police* |
| December 4, 2019: | Taurus, Model G2C, 9mm, SN: TMR20478<br>*Recovered in Brooklyn, New York, by the New York City Police* |
| December 18, 2019: | Taurus, Model G2C, .40 caliber, SN: SMR41602<br>*Recovered in Washington, DC, by the DC Metropolitan Police* |

---

[2] Incorrectly described in trace recovery as Model PT111 G2A; the corresponding Form 4473 shows it is a Model G2C.

| December 23, 2019: | Taurus, Model G2C, 9mm, Serial Number: TMA96973[3]<br>*Recovered in Hyattsville, Maryland, by the Prince*<br>*George's County Police* |
| February 2, 2020: | Taurus, Model G2C, 9mm, SN: TLY14861<br>*Recovered in Norfolk, Virginia, by the Norfolk Police* |
| February 20, 2020: | Taurus, Model G2C, .40 caliber, SN: SMR11732<br>*Recovered in Morningside, Maryland, by the Prince*<br>*George's County Police* |
| November 10, 2020: | Taurus, Model G2C, .40 caliber, SN: SMR41510<br>*Recovered in Mechanicsville, MD by Maryland State Police* |
| December 01, 2020: | Smith & Wesson, Model SD40, .40 caliber, SN: FBL1787<br>*Recovered in Washington, DC by DC Metropolitan Police* |
| August 27, 2020: | Smith & Wesson, Model SD40, .40 caliber, SN: FBL5400<br>*Recovered in Washington, DC by DC Metropolitan Police* |
| February 05, 2021: | Taurus, Model G2C, .40 caliber, SN: SMR11573<br>*Recovered in Washington, DC by DC Metropolitan Police* |
| March 16, 2021: | Smith & Wesson, Model SD40, .40 caliber, SN: FBJ5596<br>*Recovered in Washington, DC by DC Metropolitan Police* |
| March 22, 2021: | Glock, Model 27, .40 caliber, SN: BKLD736<br>*Recovered in Oxon Hill, MD by Prince George's County Police* |

10.     Several of these firearms were recovered within days of YOUNG's purchase. For example, four firearms were recovered by police in Waldorf, Maryland on September 5, 2019, were found in new condition in the original manufacturer's box. These firearms had been purchased by YOUNG in Roanoke, Virginia on three separate occasions just before they were recovered in Maryland—August 27, 2019, September 2, 2019, and September 3, 2019.

---

[3] Incorrectly described in trace recovery as Model PT111 G2A; the corresponding Form 4473 shows it is a Model G2C.

7

11.     During a voluntary interview with investigators conducted at YOUNG's

residence in November 2019, YOUNG insisted that he still possessed each of the firearms he

had purchased and claimed to be storing them in multiple locations. YOUNG ultimately

terminated the interview and invoked his right to counsel.

### SUMMARY OF INTELLIGENCE OBTAINED FROM YOUNG'S CELL PHONE

12.     I know from my training and experience that individuals engaged in illegal

firearms trafficking frequently use text, voice calls, and social media applications such as

Facebook to communicate and further their criminal activities.

13.     Specifically, individuals use such electronic applications to coordinate the

purchase, sale, transport, and transfer of firearms, and to collect proceeds from illicit sales,

maintaining frequent contact with customers and their sources of supply.

14.     On April 30, 2020, ATF secured a federal warrant to search and seize YOUNG's

cellular device assigned call number (540) 519-3890. Text messages between YOUNG and

others reveal YOUNG was knowingly involved in firearms trafficking.

15.     For example, a text exchange between YOUNG and phone number (540) 519-

7404, believed to be associated with an individual J.D.,[4] documents a request made to YOUNG

from J.D. for 10 Taurus model G2C's:

---

[4] J.D. is a convicted felon.

8

| Date | Young | J.D. |
|------|-------|------|
| September 22, 2019 | | "I need 10 G2's for both of them." |
| | "Copy!!" | |
| | | . . . |
| September 23, 2019 | | |
| | . . . | |
| | | . . . |
| | . . . | |
| | . . . | |
| | | . . . |
| | "2250 for 10" | |
| | "Don't got them" | |
| | "Call me when you can" | |
| | . . . | |
| | | . . . |
| | . . . | |
| | . . . | |
| September 24, 2019 | | "Aye did you talk to Walt?" |
| | "No didn't get chance too" | |
| September 25, 2019 | "No answer they might be closed already" | |
| September 26, 2019 | | "You on point for this morning?" |
| | | "8909" |
| | "1,087.79" | |
| | | "Ok" |
| | | "I got 1020" |
| | "I only came up with a lil 20 so far, timing off my peoples don't get off til later the 4" | |
| | | "Stand by" |
| | "Bet" | |
| | | "My wife's gonna give us 50" |

Form 4473 records show YOUNG purchased 10 Taurus, Model G2Cs from Walter Warner at Southwest Virginia Arms on September 26, 2019.

9

16.    In two text messages sent to another phone number from YOUNG's device, he states: "Bet I'll let you know if I need you, I'm bout to leave the gun selling alone shit dangerous AF lol" and "I got in some trouble with selling guns, these dudes is on my ass about me owing them some guns."

17.    An additional text exchange between YOUNG and phone number (202) 845-9925, believed to be associated with an individual M.W., documents a meeting time and location in Washington, D.C.:

| **Date** | **Young** | **M.W.** |
|---|---|---|
| 08/31/2019 (UTC) | | "Which address u put in?" |
| | "Mellon Joint" | |
| | | "465 Mellon St SE Washington DC 20032" |
| | "Ok" | |
| | "Im 25 min from my first joint just keeping you posted bro" | |
| | | "Ok" |
| | | "Way?" |
| | "18411 Maugans Ave, Hagerstown, MD 21742… Im like 10 min from there" | |
| | "Its only an hour and half away from you" | |
| | | "Ok" |
| | "Otw to you" | |
| | | "Ok. Wya?" |

18.    On August 31, 2019 at 5:37 PM (EST) ShotSpotter, a gunshot detection system in Washington DC, alerted Metropolitan Police to gunfire in the 2800 Block of Langston Place

SE Washington, D.C. Police Officers located 15 shell casings in the area, which were then entered into the National Integrated Ballistics Network (NIBIN).

19.     On December 1, 2020, Washington, D.C. Police recovered a firearm which was test fired and showed a NIBIN hit for the aforementioned ShotSpotter alarm. The firearm was then traced, which revealed Sedale YOUNG was the original purchaser 30 days prior.

20.     Further review of text messages from YOUNG's phone appears to reveal a relevant text exchange approximately one month after the ShotSpotter alarm. The text messages states: "Yea this is my new number somebody tried to rob me last month" and "Naw they didn't get nothing, and in Maryland I was out there doing business and dude pulled a gun on me and shot twice, then I had do what I had to do"

21.     In February, 2020, ATF Roanoke received subscriber information in response to a subpoena confirming 540-519-3890 was registered to Sedale YOUNG. This number was associated with Sprint Corporation until its merger with **T-MOBILE** on April 1, 2020.

22.     Based on your affiant's training and experience, your affiant knows that a person who is involved in criminal activity often uses electronic devices, including but not limited to wireless telephones, to aid in their criminal activities.  Your affiant knows, based on his training and experience, suspects frequently communicate with each other prior to, during and/or after the commission of a crime, and frequently utilize cellular phones during the commission of a crime. The information obtained from this cellphone usage can be of significant assistance to the investigation and evidence in a subsequent criminal prosecution by showing the communication records/pattern(s) between any possible suspect and co-conspirators.  Location information and call detail records generated by the use of cellphones can indicate the general geographic area that the mobile device was located at, as well as provide investigative leads of

11

whether witnesses or suspects communicated with anyone prior to, during and/or after a criminal event, which can associate the cellular phone/device to a specific suspect or individual.

23.     Based on your affiant's training and experience, your affiant knows that acquiring an extended period of call detail records can assist in establishing a pattern of life, or use, of a target telephone. Longer period of records outside the immediate date/time frame of the underlying crime can assist investigators in establishing calling patterns of the TARGET and prevalent cell sectors utilized by the SUBJECT PHONE. The establishment of this pattern of life, or use, is critical in helping investigators determine if, and when, this calling pattern changes, intensifies, or wanes during relevant time periods within the investigation. These changes in the pattern of life can also assist investigators in identifying any co-conspirator(s) who may have provided aid or counsel during the relevant time period surrounding the conception, planning, commission and/or cover-up of the criminal activity.

24.     Based on your affiant's training and experience, your affiant knows that historical cell-site records identify the cellular tower that a target phone used when engaging in a communication such as a call or text. Many cellular towers have multiple antenna faces, or "sectors," each of which provides service to a particular portion of the tower's geographic service area. In such cases, the historical cell-site records will also identify the sector of the cell tower that the phone used during the communication. Investigators can use this information about the cell tower and sector that were used by a phone to determine the general area in which the target phone was likely to be at the time that a particular communication occurred. While the precision of this information varies depending on factors including the distance between cellular towers, at best, cell-site location information will reveal the neighborhood in which a phone was likely to have been located.

12

25. Based on your affiant's training and experience, your affiant knows that certain events like phone calls, text messages, or data applications updating can cause the Service Provider to initiate a signal on their network to establish the location of a device. This location data is then stored by the Service Provider, such as **T-MOBILE**. Such information as date, time, latitude, longitude, cell sites, and accuracy of the location data are stored and can be provided to law enforcement. Not every call, text message, or data application update causes his data to be created and stored. Therefore, there is no way to know what exact information the Service Provider has until it is reviewed. This data can be helpful to investigators when trying to locate the user of a given cellular device and/or to establish a pattern of life for the user of the given cellular device.

26. The requested call detail records are evidence that will serve to potentially identify investigative leads and avenues forward, prove or disprove known and future investigative conclusions, and/or corroborate or disprove or discredit (as applicable) witness and/or suspect statements. Investigators want to learn if the cell site data for the user of **T-MOBILE** phone number (**540) 519-3890** show that the devices accessed cell sites in the area of the crimes during the relevant time frames. This will be a significant piece of information that will help investigators to know whether or not the user of the SUBJECT PHONE should be considered as a suspect in this investigation

27. In my training and experience, I have learned that **T-MOBILE** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data

13

identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

28.      Based on my training and experience, I know that **T-MOBILE** can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as **T-MOBILE** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29.      Based on my training and experience, I know that wireless providers such as **T-MOBILE** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **T-MOBILE** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

14

investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

30.     A preservation request was submitted to **T-MOBILE** on August 27, 2021.

## AUTHORIZATION REQUEST

31.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.     I further request that the Court direct **T-MOBILE** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on **T-MOBILE**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

33.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Andrew Burton
Special Agent
Bureau of Alcohol, Tobacco, Firearms &
Explosives

15

Sworn to me via reliable means on  August 27 , 2021

*Robert S. Ballou*

UNITED STATES MAGISTRATE JUDGE